1  Michael N. Berke, Esq. SBN: 81317
   LAW OFFICE OF MICHAEL N. BERKE
2  25001 The Old Road
   Santa Clarita, CA  91381
3  (661) 259-1800
   (661) 259-1865 Fax
4  Email: michael.berke@berkeslaw.com

5  Attorney for Plaintiff
   Palmdale 3D, LLC

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 PALMDALE 3D, LLC, a California        ) Case No.:  CV-14-7523-MWF-PLAx
   Limited Liability Company,            )
12                                       ) SECOND AMENDED COMPLAINT
                                         ) FOR:
13              Plaintiff,               )
                                         ) 1. Fraud
14         vs.                           ) 2. Fraudulent Transfer
                                         ) 3. Conversion and Constructive Trust
15 JOHN P. CALAMOS, SR., PATRICK         ) 4. Common Counts
   IMESON, CALIM PRIVATE EQUITY,         ) 5. Alter Ego
16 LLC, a Delaware Limited Liability     )
   Company, and Does 1 through 20,       )
17 inclusive,                            ) DEMAND FOR JURY TRIAL
                                         )
18              Defendants.              )
                                         )
19 _____     )

20

21      Plaintiff, PALMDALE 3D, LLC, alleges as follows:

22              GENERAL ALLEGATIONS

23      1.    At all times herein mentioned Plaintiff resided in Los Angeles

24 County, California.  The Defendants reside outside California, but each at all times

25 mentioned herein, conducted the business set forth in this Second Amended

26 Complaint within Los Angeles County, California.  Plaintiff is informed and

27 believes that Calim Private Equity, LLC, ("CALIM") is a Delaware Limited

28 Liability Company duly authorized to conduct business in the State of California.

                              1
                    SECOND AMENDED COMPLAINT

1    John P. Calamos, Sr., ("CALAMOS") and Patrick Imeson ("IMESON") are the
2    only members of CALIM.

3        2.    Plaintiff is informed and believes and thereon alleges that the acts
4    giving rise to the allegations contained herein occurred within this judicial district.

5        3.    The true names and capacities, whether individual, corporate,
6    associates, or otherwise, of the defendants herein designated as Does 1 through 20,
7    inclusive, are unknown to Plaintiff and Plaintiff will ask leave of Court to amend
8    this Second Amended Complaint to show the true names and capacities when same
9    are ascertained.

10       4.    At all times herein mentioned, the Defendants, and each of them
11   (collectively "Defendants"), were agents and/or employees of the other defendants,
12   and were acting within the course and scope of such agency and employment, at
13   the time of the claim asserted herein.

14       5.    That there now exists, and at all times herein mentioned, there existed
15   a unity of interest and ownership between the Defendants CALIM, CALAMOS,
16   and IMESON, and each of them, such that any individuality and separateness of
17   personalities between the Defendants ceased to exist, and Defendants are and
18   were at all time mentioned herein, the alter ego of each other, such that there would
19   be an inequitable result if the acts in question were treated as those of the corporate
20   defendants alone.

21       6.    At all times herein mentioned, Defendant CALIM was inadequately
22   capitalized, was not designed or intended to be a profit-making business, failed to
23   keep proper and adequate business records, was and is unable to pay obligations to
24   Plaintiff as they came due, and diverted CALIM funds and/or other assets to other
25   than acceptable business uses, and the Defendants IMESON and CALAMOS
26   treated the assets of the CALIM as their own by transferring CALIM monies to
27   themselves.
28   //

                                        2

## FACTS

7.     Plaintiff is the assignee of the underlying debt reduced to judgment in its favor in the case entitled <u>Palmdale 3D v. Black Diamond Financing, LLC</u>, etc., et al., Los Angeles County Superior Court Case no. SC102413.  Judgment was entered against Black Diamond Financing, LLC, and Global VR, Inc., (collectively "GLOBAL VR") on February 2, 2012, in the amount of $1,454,084.54 ("Global VR judgment").  This original debt occurred on June 7, 2006, when Palmdale 3D's assignor, Apex Investment Fund, Ltd., lent $1 million ("The Loan") as set forth in the lawsuit referred to above.

8.     Defendant CALIM, a guarantor of the debt in case no. SC102413, was a named party but dismissed from that action without prejudice subject to the creation of a new Guaranty executed on June 26, 2009.  A true and correct copy of the new Guaranty is attached hereto marked Exhibit "A" and incorporated herein. As part of the settlement in the underlying case a Stipulation for Entry of Judgment (STIPULATION") for the remaining Defendants in case no. SC102413 was prepared and signed.   A true and correct copy of the STIPULATION is attached hereto marked Exhibit "B" and incorporated herein.  The new Guaranty caused CALIM to be responsible for the underlying debt and then judgment in case no. SC102413 upon the following circumstances:

   a. An event of default under the Agreement occurs (the "Default"), and the Default continues and remains unpaid for a period of fourteen (14) calendar days after written notice by Palmdale to the Obligors; and

   b. The Default continues and remains uncured for an additional period of seven (7) calendar days after written notice by Palmdale to Calim Equity, and Calim Equity fails, neglects, or refuses to cure the Default, and

   c. Palmdale files the Stipulation for Entry of Judgment against the Obligors, and undertakes reasonable collection efforts against the Obligors, including, without limitation, obtaining court orders relating to the collection

3

1  thereof, prior to seeking to enforce this Guaranty.

2        9.    The Defendants in the underlying case defaulted in performance of the

3  STIPULATION, Exhibit "B", and judgment was entered on February 2, 2010.

4  Enforcement of that judgment proved to be futile and as a result, Plaintiff obtained

5  an uncontested judgment against CALIM pursuant to the new Guaranty on

6  November 25, 2011, in the amount $1,692,581.54 ("CALIM judgment"). A copy

7  of the CALIM judgment is attached hereto marked Exhibit "C" and incorporated

8  herein. To date CALIM has paid nothing on the judgment. Prior to and

9  subsequent to the entry of judgment against CALIM, Defendant IMESON

10  repeatedly orally promised payment by Defendant CALIM in full to Plaintiff, to no

11  avail. Approximately three (3) years ago IMESON invited Peter Schlesinger to

12  meet with him in Denver, CO, where IMESON resides, in an effort to improve

13  their relationship. IMESON offered to pay the CALIM debt as long as Mr.

14  Schlesinger agreed to reinvest 50% of the payment in his ongoing ventures with

15  CALAMOS, which was declined. CALIM at the time of execution of the new

16  Guaranty until the present was and is without sufficient assets to satisfy any

17  portion of the judgment, and at no time was that information revealed to the

18  Plaintiff, its predecessor, or Peter Schlesinger. The GLOBAL VR judgment

19  remains unsatisfied.

20      10. CALAMOS is and was at all times mentioned herein the sole voting

21  member of CALIM. He installed the managing member, AJAX, LLC, wholly

22  owned by CALAMOS, managed by John Lagehorst, a longtime Calamos

23  Investments employee, to operate CALIM. Plaintiff is informed and believes and

24  thereon alleges CALAMOS ratified all of the acts of those persons acting on behalf

25  of CALIM, including but not limited to co-Defendant Imeson. Defendant

26  IMESON was and is the only other member of CALIM, who enjoyed a personal

27  and professional relationship with the Plaintiff's principal, Peter Schlesinger, prior

28  to the initial loan giving rise to the Global VR judgment. Defendant CALAMOS is

1    an internationally prominent investment fund manager and based on his wealth and
2    reputation, as represented to Plaintiff by IMESON and confirmed by its principal,
3    Peter Schlesinger. Plaintiff is informed and believes thereon alleges that
4    CALAMOS, by using his name in combination with IMESON to create the Calim
5    brand, intended to convey the involvement of CALAMOS in these businesses so
6    named connoting credibility and integrity, to induce persons such as Plaintiff to act
7    for his benefit, in this case to make The Loan. Based on Plaintiff's relationship
8    with IMESON and CALAMOS' reputation, Plaintiff's assignor and Plaintiff, by
9    and through Peter Schlesinger, provided The Loan, extended the payment due date,
10   and entered into the new Guaranty as set forth above.

11        11.    In an effort to enforce payment of both the GLOBAL VR and CALIM
12   judgments, Plaintiff served post-judgment written discovery on both GLOBAL
13   VR, Inc., and CALIM. Document Requests were served on March 17, 2014, on
14   GLOBAL VR and responses were received on April 23, 2104. The judgment
15   debtor examination of GLOBAL VR, Inc., by Ken Bayer, its President, occurred
16   on May 22, 2014. CALIM was served with Document Requests twice, the first
17   time on April 9, 2014, and responses received on May 21, 2014; and the second
18   time on July 11, 2014, and responses received on August 12, 2014. Plaintiff
19   discovered that:

20        a)  CALAMOS was and is the sole voting member of CALIM;

21        b)  In 2007 CALAMOS appointed AJAX, LLC, another Calamos
22   company with John Lagedrost (a Calamos Investment Fund employee and former
23   Vice-President of Calamos Investments from 2004-2010) as manager of CALIM;

24        c)  Between January 2011 and December 2013 CALIM distributed to
25   both CALAMOS and IMESON the sum of $721,243.00 to each for a total of
26   $1,442,486.00, on December 31, 2011;

27        d)  CALIM is merely an investment vehicle and its only source of
28   income is profit participation derived from its ownership interest in GLOBAL VR,

SECOND AMENDED COMPLAINT

1    otherwise, CALIM is without any appreciable operating funds;

2         e)  CALIM had no funds to repay Plaintiff;

3         f)  From 2007and each year up to and including until the date of the

4    filing of this Second Amended Complaint GLOBAL VR has not made a profit and,

5    thus, was never able to independently satisfy the GLOBAL VR judgment or

6    provide CALIM with money to pay Plaintiff.

7                          FIRST CAUSE OF ACTION

8                                (Fraud)

9                          (Against all Defendants)

10        12.   Plaintiff realleges and incorporates herein the allegations contained in

11   Paragraphs 1 through 11 of the Second Amended Complaint as if fully set forth

12   herein.

13        13.   When GLOBAL VR failed to repay Plaintiff's loan, IMESON on

14   behalf of CALIM and CALAMOS, with his permission and consent, made

15   representations of material fact that induced Plaintiff to dismiss CALIM as a party

16   defendant in the first action, case no. SC102413, enter into the new Guaranty,

17   Exhibit **"A"**, and that CALIM would meet its commitments as set forth in the new

18   Guaranty.

19        14.   In addition to the facts presented above, those representations were:

20        a)  Global VR, Inc., and the other Calim entities as set forth in

21   Exhibit"B"were solvent, profitable and able to repay The Loan timely;

22        b)  In the event the entities identified in (a) above were unable to

23   repay The Loan, CALIM was solvent and able to repay The Loan;

24        c)  In the event CALIM was unable to repay The Loan CALAMOS

25   would do so according to the terms of the new Guaranty;

26        d)  the defendants, and each of them, suppressed the truth of the true

27   financial condition of GLOBAL VR and CALIM until Discovery in 2014 disclosed

28   otherwise;

SECOND AMENDED COMPLAINT

1    e) the Defendants, by and through IMESON and CALIM claimed

2 both GLOBAL VR and CALIM were capable of repaying the Plaintiff as set forth

3 above;

4    f) In or about June 2013, IMESON contacted Plaintiff, telephoning

5 Peter Schlesinger and again represented he would see to it that Plaintiff was paid

6 the amount alleged herein owed by CALIM; and

7    g) IMESON in March 21, 2014, again offered to repay The Loan.

8    15.    These representations were in fact false. The representations made by

9 CALIM in the new Guaranty were false in that CALIM either never intended, or

10 was incapable, to make good its guaranty to Plaintiff. When Defendants made

11 these representations to Plaintiff, Defendants knew they were false. The true facts

12 were that Global VR, Inc., and all of the Calim entities including CALIM were

13 never financially capable of repaying Plaintiff. CALIM, by virtue of IMESON's

14 misrepresentations, along with the consent of CALAMOS, obtained a 2 year delay

15 forestalling payment preventing Plaintiff from obtaining judgment against CALIM,

16 thus depriving Plaintiff any opportunity to enforce its judgment or employ other

17 remedies against CALIM, and permitting Defendants CALIM, CALAMOS and

18 IMESON to loot CALIM.

19    16.    Plaintiff acted in justifiable reliance upon the truth of the

20 representations of Defendant IMESON as Plaintiff, by and through its principal

21 Peter Schlesinger, based on both their personal and professional relationship, and

22 CALAMOS' reputation, believed and relied on IMESON's and CALIM's

23 promises to repay Plaintiff.

24    17.    As a result of Defendants' fraudulent conduct, Plaintiff has suffered

25 and will continue to suffer damages and pecuniary loss. Plaintiff has sustained

26 monetary loss in the amount of $1,692,581.54 plus interest from November 25,

27 2011, to the present.

28 //

7

1       18.    Defendants, and each of them, and at all times mentioned herein

2   conspired to deceive Plaintiff and acting with malice, oppression and in conscious

3   disregard of the rights of Plaintiff by intentionally depleting CALIM of funds

4   preventing Plaintiff from payment, thus entitling Petitioner to punitive and

5   exemplary damages in an amount to be proved at trial.

6       19.    For attorney's fees pursuant to the Guaranty, Exhibit "A".

7   SECOND CAUSE OF ACTION

8   Fraudulent Conveyance

9   (Against All Dcfendants)

10       20.    Plaintiff realleges and incorporates herein the allegations contained in

11   Paragraphs 1 through 16, of the Second Amended Complaint as if fully set forth

12   herein.

13       21.    *Civil Code* § 3439.04 states: "Transfers fraudulent as to present and

14       future creditors; factors to determining intent

15       (a) A transfer made or obligation incurred by a debtor is fraudulent as to a

16       creditor, whether the creditor's claim arose before or after the transfer was

17       made or the obligation was incurred, if the debtor made the transfer or

18       incurred the obligation as follows:

19       (1) With actual intent to hinder, delay, or defraud any creditor of the

20       debtor...

21       (b) In determining actual intent under paragraph (1) of subdivision (a),

22       consideration may be given, among other factors, to any or all of the

23       following:

24       (1) Whether the transfer or obligation was to an insider...

25       (3) Whether the transfer or obligation was disclosed or concealed.

26       (4) Whether before the transfer was made or obligation was incurred, the

27       debtor had been sued or threatened with suit.

28       (5) Whether the transfer was of substantially all the debtor's assets...

8

(7) Whether the debtor removed or concealed assets.

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred...."

22.    Plaintiff alleges the transfer of monies between January 2011 and December 2013 to CALAMOS and IMESON, the only members of CALIM, was without consideration and done intentionally to avoid payment to Plaintiff, despite CALIM's promises to pay Plaintiff.

23.    Further, the representations made by CALIM in the new Guaranty were false in that CALIM never intended to make good its guaranty to Plaintiff, but in fact IMESON and CALAMOS intended to and did divert money to them or to others.

24.    As a result of Defendants' fraudulent conduct, Plaintiff has suffered and will continue to suffer damages and pecuniary loss. Plaintiff has sustained monetary loss in the amount of $1,692,581.54 plus interest from November 25, 2011, to the present.

25.    Defendants, and each of them, and at all times mentioned herein conspired to deceive Plaintiff and acted with malice, oppression and in conscious disregard of the rights of Plaintiff by intentionally depleting CALIM of funds preventing Plaintiff from payment, thus entitling Petitioner to punitive and exemplary damages in an amount to be proved at trial.

26.    For attorney's fees pursuant to the Guaranty, Exhibit "A".

//

//

9

SECOND AMENDED COMPLAINT

## THIRD CAUSE OF ACTION

Conversion and Constructive Trust

(Against all Defendants)

27.    Plaintiff realleges and incorporates herein the allegations contained in Paragraphs 1 through 23, of the Second Amended Complaint as if fully set forth herein.

28.    Beginning July 1, 2009, up to and including December 31, 2013, Defendants IMESON and CALAMOS, and each of them, exercised dominion and control over monies in possession of CALIM that were guaranteed by CALIM to be paid to Plaintiff and interfered with Plaintiff's right to possession of the monies by diverting that pledged money to themselves and/or others thus constituting Conversion.

29.    At the time Defendants IMESON and CALAMOS wrongfully exercised control over Plaintiff's monies Plaintiff was entitled to possession of said monies based on the representations and promises of these Defendants, and these Defendants intentionally took possession of said monies denying Plaintiff payment.

30.    Defendants IMESON and CALAMOS, by virtue of their conduct, acquired monies belonging to Plaintiff to which these Defendants were not entitled. After the GLOBAL VR judgment was entered said funds in the amount of that judgment did not belong to these Defendants, and no gift or windfall was to be provided to these Defendants.

31.    At all times mentioned herein, the monies referred to herein belonged to the Plaintiff and Plaintiff has demanded that all Defendants pay said monies to Plaintiff.

32.    Defendants IMESON and CALAMOS, despite being able to do so, have not paid said monies to Plaintiff, and will be unjustly enriched if allowed to keep said monies.

10

33.   By reason of the aforesaid, Plaintiff has been damaged by in the amount of $1,692,581.54 plus interest from November 25, 2011, to the present.

34.   Defendants, and each of them, and at all times mentioned herein conspired to deceive Plaintiff and acting with malice, oppression and in conscious disregard of the rights of Plaintiff by intentionally depleting CALIM of funds preventing Plaintiff from payment, thus entitling Petitioner to punitive and exemplary damages in an amount to be proved at trial.

## FOURTH CAUSE OF ACTION

### Common Counts

### (Against all Defendants)

### COUNT 1

### Account Stated

35.   Plaintiff realleges and incorporates herein the allegations contained in Paragraphs 1 through 32, of the Second Amended Complaint as if fully set forth herein.

36.   An account was stated by and between Plaintiff and Defendants, and each of them, wherein it was ascertained, determined and agreed that Defendants, and each of them, was indebted to Plaintiff in the amount of $1,692,581.54 plus interest from November 25, 2011.  No part of said sum has been paid, although demand for payment has been made.  There is now due, owing, and unpaid, the amount of $1,692,581.54 plus interest from November 25, 2011.

### COUNT 2

### Money Had and Received

37.   Plaintiff realleges and incorporates herein the allegations contained in Paragraphs 1 through 32, of the Complaint as if fully set forth herein.

38.   Defendants, and each of them, became indebted to Plaintiff in the amount of $1,692,581.54 on November 25, 2011, for money previously delivered to Defendants at their specific instance and request.  Defendants, and

11

1  each of them, are indebted to Plaintiff in the sum of $1,692,581.54, together with
2  interest thereon at the rate of ten percent (10%) per annum from November 25,
3  2011.  No part of said sum has been paid, although demand for payment has been
4  made.  There is now due, owing, and unpaid, the sum of $1,692,581.54 together
5  with interest thereon at the legal rate of ten percent (10%) per annum since
6  demanded on November 25, 2011.

7                          FIFTH CAUSE OF ACTION
8  Alter Ego or alternatively Amendment and Enforcement of Judgment in *CALIM 1*
9                  (Against Defendants CALAMOS and IMESON)
10     39.    Plaintiff realleges and incorporates herein the allegations contained in
11  Paragraphs 1 through 32, of the Second Amended Complaint as if fully set forth
12  herein.
13     40.    At all times herein mentioned Defendants CALAMOS and IMESON
14  were and are the only members of CALIM, CALAMOS was and is the sole voting
15  member of CALIM, and CALAMOS and IMESON approved the actions of
16  CALIM.
17     41.    The Guaranty, Exhibit "A", was signed by CALIM on June 26, 2009.
18  Global VR, Inc., and the related Calim entities failed to pay pursuant to the
19  STIPULATION and the GLOBAL VR judgment.  As a result, Palmdale 3D, LLC,
20  obtained judgment against CALIM on November 5, 2011.  When the Guaranty
21  was executed up to and including the date of the filing of this complaint, CALIM
22  was without assets to make good its promise to pay Plaintiff or, alternatively, it
23  willfully failed to pay Plaintiff if it had the assets to do so, despite the repeated oral
24  promises to pay made by IMESON to Plaintiff.  At all times herein mentioned
25  CALIM was represented by counsel, including counsel of record herein Leonard,
26  Dicker, Schrieber LLP.  Plaintiff is informed and believes and thereon alleges that
27  the Defendants willfully refused to respond to Plaintiff's complaint and permitted
28  the default judgment to be entered as they knew Plaintiff would be unable to

12

SECOND AMENDED COMPLAINT

1  satisfy its judgment against CALIM.

2       42.  Defendants CALAMOS and IMESON should be found to be the alter

3  egos of CALIM because, among other things: 1) CALAMOS and IMESON are the

4  sole members of CALIM, 2) as the sole voting member of CALIM, CALAMOS

5  controlled the conduct of the judgment debtor CALIM including appointing AJAX,

6  LLC, wholly owned and/or otherwise controlled the managing member of CALIM,

7  operated by John Lagedrost a longtime employee of various CALAMOS

8  businesses appointed by CALAMOS; 3) the combination of "CALAMOS and

9  IMESON" created the name CALIM designed to induce third parties to believe the

10  credibility of CALIM was identified with CALAMOS; 4) CALIM was merely an

11  investment vehicle without any independent means of generating revenue; 5)

12  CALAMOS and IMESON distributed money from CALIM to themselves during

13  and after litigation with money that could have been used to pay Plaintiff; 6)

14  CALIM, by and through CALAMOS and IMESON, failed to keep accurate and

15  complete business records;  7) GLOBAL VR has never turned a profit, and 8)

16  CALIM owned and  controlled Global VR, Inc., facts never revealed to Plaintiff or

17  its predecessor, and neither CALIM nor GLOBAL VR were capable of repaying

18  Plaintiff.

19       43.  Plaintiff alleges that the willful failure to participate in the lawsuit

20  resulting in the default judgment was a conscious decision by the Defendants

21  herein and that as such they exercised control of the underlying litigation by not

22  participating; that there is such a unity of interest and ownership that the separate

23  personalities of CALIM and the owners no longer exist; and an inequitable result

24  will follow if the acts are treated as those of the entity alone.

25       44.  Accordingly, Plaintiff respectfully requests the Court either amend and

26  enforce the judgment in underlying case against CALIM by adding CALAMOS

27  and IMESON as joint judgment debtors, or by finding CALAMOS and IMESON

28  to be the alter egos of CALIM and be held personally liable for the amount owed

1 | to Plaintiff.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiff requests judgment against CALIM, CALAMOS and IMESON as follows:

1.      For general damages in the $1,692,581.54, plus interest at the legal rate from November 25, 2011;

2.      For special damages in an amount to be proved at trial;

3.      For punitive damages in an amount to be proved at trial;

4.       Reasonable attorney's fees and costs; and

5.      Such other and further relief to be awarded as the Court may deem proper.

DATED:  October 28, 2014

By: _____

MICHAEL N. BERKE,
Attorney for Plaintiff

SECOND AMENDED COMPLAINT